No. 93-046

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

DON KUDLOFF,

Plaintiff and Appellant,

-v-

CITY OF BILLINGS, a political
subdivision of the State of Montana;
and BILLIE KRENZLER, MARION DOZIER,
BETTY MILLER, DAN FARMER, JOHN
MICHUNOVICH, CHARLES TOOLEY, OWEN
NEITER, RALPH STONE, RICHARD E. CLARK,
and NORM KOLPIN, all members of the
City Council for the City of Billings,
Montana; and JAMES VAN ARSDALE, Mayor
of the City of Billings, Montana,

Defendants and Respondents.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert L. Stephens, R. L. Stephens, P.C., Billings,
Montana

For Respondents:

Leo S. Ward, Browning, Kaleczyc, Berry &
Hoven, Helena, Montana

Submitted on Briefs:  August 26, 1993

Decided:  September 21, 1993

Filed:

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from two Memoranda and Orders of the Thirteenth Judicial District Court granting summary judgment to the defendants. We affirm.

We restate the issues on appeal as follows:

1. Did the plaintiff have standing to maintain a "wrongful annexation" action after he sold the real property at issue?

2. Has there been a violation of plaintiff's constitutional rights which would support a 42 U.S.C. § 1983 action?

The plaintiff, Don Kudloff (Kudloff), filed a complaint on March 2, 1990, alleging that the City and its city council members and mayor annexed his real property in violation of state statute. Kudloff also alleged that, in the process of annexing his property, the defendants violated his constitutional rights, giving rise to a claim under 42 U.S.C. § 1983 (§ 1983 claim). In his prayer for relief, Kudloff requested that the annexation be set aside and sought his attorney's fees and costs and $50,000 for emotional and physical pain and suffering.

The defendants denied the allegations of Kudloff's complaint and asserted a number of affirmative defenses, including immunity. After preliminary discovery, the City filed a motion for summary judgment based on its asserted immunity defense. In addition, the City argued that the mayor and city council members were entitled to absolute legislative immunity or, alternatively, qualified good faith immunity. Kudloff also filed a motion for summary judgment, alleging that immunity was not available for a § 1983 claim and

2

that he was entitled to judgment as a matter of law under the facts of the case.

After some further discovery, briefing, and oral argument, the District Court entered its Memorandum and Order on December 13, 1991, granting summary judgment to the city council members and the mayor, on all counts, on the basis of immunity. The District Court also granted summary judgment to the City on Kudloff's § 1983 claim, but denied summary judgment to the City on the issue of the legitimacy of its annexation of Kudloff's property, treating Kudloff's complaint as a petition for court review under § 7-2-4741, MCA. Kudloff's motion for summary judgment was denied.

Thereafter, some additional discovery was conducted. On June 2, 1992, the City filed a second motion for summary judgment. The basis for this motion was that Kudloff had sold the real property and no longer had standing to maintain the lawsuit. On November 17, 1992, the District Court granted the City's motion for summary judgment, finding that Kudloff had no standing to attack the validity of the annexation procedures because he had sold the real property which was the subject of the pending action. From these summary judgments, Kudloff appeals.

Our standard in reviewing a grant of summary judgment is the same as that initially utilized by the district court. McCracken v. City of Chinook (1990), 242 Mont. 21, 24, 788 P.2d 892, 894. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P.

3

## I — DISMISSAL OF WRONGFUL ANNEXATION" CLAIM

In Kudloff's complaint, he alleged that he owned the real property which the City annexed, and he requested that the annexation be set aside as void. A party vested with legal title is the real party in interest in a dispute involving real property. Blakely v. Kelstrup (1985), 218 Mont. 304, 306, 708 P.2d 253, 255. Clearly, at the time Kudloff filed his complaint, he was the real party in interest entitled to bring the action under Rule 17(a), M.R.Civ.P., which states that "[e]very action shall be prosecuted in the name of the real party in interest."

After the commencement of this action, Kudloff sold the subject real property. On June 24, 1992, in his response to the City's second motion for summary judgment, Kudloff stated that he "[did] not seek a judgment or injunction on annexing the property and clearly, based upon the relinquishment of the property, that is outside his scope of available remedies." Rather, Kudloff claimed that he sold the real property in order to mitigate his damages, and expressed his intent to seek damages for losses he alleged resulted from the "forced sale" of the real property,

However, Kudloff at no time amended his complaint to reflect his new intentions. In this case, an amended complaint was required when the theory of Kudloff's case and his alleged damages changed. The purpose of a complaint, and subsequent amendments, is to provide adequate notice to the defendants of the nature of the actions they must defend against and the remedy which is sought. Here, more than two years after the original complaint was filed,

4

Kudloff changed entirely the nature of the action without providing the required notice to the defendants. Therefore, the District Court properly dismissed the "wrongful annexation" action.

## II - ALLEGED CONSTITUTIONAL VIOLATIONS

Kudloff also appeals the District Court's dismissal of his § 1983 claim. In order to support a claim under 42 U.S.C. § 1983, a constitutional right must have been violated by a person acting under color of state law. A threshold requirement is that a requisite violation has occurred. In this case, Kudloff alleges that, in the process of annexing his property, the defendants violated a number of his constitutional rights. We will address each in turn.

### A. "TAKING" WITHOUT COMPENSATION

Kudloff alleges that the annexation of his real property represented an unconstitutional taking because the extension of services under § 7-2-4732, MCA, was impractical and unfeasible, and because no cost-benefit analysis was performed. However, a regulatory taking of property by a municipality is allowed even if the value of that property and its usefulness is diminished. Penn Central Transp. Co. v. New York City (1978), 438 U.S. 104, 131, 98 S.Ct. 2646, 2662-63, 57 L.Ed.2d 631, 652-53. It is only when the owner of the real property has been called upon to sacrifice all economically beneficial use of that property in the name of the common good that a constitutionally-protected taking has occurred. Lucas v. South Carolina Coastal Council (1992), ___ U.S. ___, ___, 112 S.Ct. 2886, 2895, 120 L.Ed.2d 798, 815.

5

In Penn Central, New York City enacted a Landmarks Preservation Law (Landmarks Law) to protect historic landmarks and neighborhoods from destruction or alteration. Pursuant to this Landmarks Law, the Landmark Preservation Commission (Commission) designated the Grand Central Terminal (Terminal), which was owned by Penn Central Transportation Company (Penn Central), a landmark. Thereafter, Penn Central entered into a lease with UGP Properties (UGP), allowing UGP to construct a multistory office building over the Terminal. Pursuant to the Landmarks Law, the parties submitted their building plan to the Commission, which rejected the plan for the building as destructive of the Terminal's historic and aesthetic features. Penn Central, 438 U.S. at 109-17. Penn Central and UGP filed suit, claiming that the application of the Landmarks Law had "taken" their property without just compensation. The trial court granted injunctive relief to the plaintiffs. That judgment was reversed by the New York Supreme Court, Appellate Division, which held that there was no taking because there was no proof that the regulation deprived the plaintiffs of all reasonable beneficial use of the property. Penn Central, 438 U.S. at 119. The New York Court of Appeals affirmed, summarily rejecting the claim that the Landmarks Law had taken property without just compensation. Penn Central, 438 U.S. at 120-21. On certiorari, the United States Supreme Court stated that land-use regulations which adversely affect recognized real property interests, such as zoning regulations, are commonly upheld. Penn Central, 438 U.S. at 125. The Supreme Court further stated that any interference with

6

the property at issue was not of such a magnitude that compensation was required to sustain it.  Penn Central, 438 U.S. at 137.  The Supreme Court, in affirming the appellate courts, held that the restrictions imposed were substantially related to the promotion of the general welfare while permitting reasonable beneficial use of the Terminal to the plaintiffs.  Penn Central, 438 U.S. at 138.

In Lucas, the petitioner purchased two residential lots on a South Carolina barrier island, intending to build single-family homes, in 1986.  In 1988, the South Carolina legislature enacted the Beachfront Management Act (Act), which barred Lucas from building any permanent structures on his land.  Lucas, -U.S. at ___, 112 S.Ct. at 2889.  He filed suit in the South Carolina Court of Common Pleas, contending that the Act effected a taking of his property without just compensation.  The court agreed, finding that the Act rendered Lucas' property valueless.  The Supreme Court of South Carolina reversed, holding that, because the Act was designed to prevent serious public harm, no compensation was owed to Lucas.  Lucas, ___ U.S. at ___, 112 S.Ct. at 2890.  On certiorari, the United States Supreme Court stated that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."  Lucas, ___ U.S. at ___, 112 S.Ct. at 2893.  Here, Lucas was required to sacrifice all economically beneficial uses in the name of the common good by leaving the property in its natural state.  Lucas, -U.S. at-, 112 S.Ct. at 2895.  The state is required to compensate a property owner only if it seeks to sustain a regulation that deprives the property

owner of all economically beneficial uses of his property. That rule, however, does not apply if the use or interest the state is attempting to regulate was not part of the owner's original estate or title. Under the latter circumstances, the state is not required to compensate the property owner. Lucas, -U.S. at-, 112 S.Ct. at 2899. According to that case:

> [a]ny limitation so severe cannot be newly legislated or decreed (without compensation)., but must inhere in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership. . . . It seems unlikely that common-law principles would have prevented the erection of any habitable or productive improvements on petitioner's land: they rarely support prohibition of the essential use of land. . . The question, however, is one of state law to be dealt with on remand.

Lucas, ___ U.S. at ___, 112 S.Ct. at 2900-01. On that basis, the Supreme Court reversed and remanded the case.

The case at hand is similar to Penn Central in that the annexation of the property may have diminished the value and usefulness of the property. However, any effect the annexation had on the value of the property does not rise to the level of Lucas which would require compensation. As stated in Lucas, "the property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers. . . ." Lucas, ___ U.S. at-, 112 S.Ct. at 2899.

In 1974, Kudloff had been granted a special exception allowing ski-related uses of the real property. The record in this case indicates that this special exception remained effective after the City annexed Kudloff's property. In addition, there is no evidence

8

in the record that Kudloff ever requested a zoning change or special variance for ski-related uses after the annexation took place. Kudloff is hard-pressed to argue that a "taking" occurred when he never attempted to ascertain whether he could use the property for ski-related purposes. For the above reasons, Kudloff's allegation that an unconstitutional taking has occurred is without merit.

B.   FAILURE TO GRANT EXEMPTION

The annexation by the City was conducted under §§ 7-2-4501, et seq., MCA, which allow a city to annex wholly surrounded land. Kudloff claims that his constitutional rights were violated when the defendants annexed his real property without granting him a statutory exemption under this part. Kudloff bases this assertion on § 7-2-4503, MCA, which states:

> Land shall not be annexed under this part whenever the land is used: . . . (2) for the purpose of maintaining or operating . . . a place for public or private outdoor entertainment or any purpose incident thereto.

Fatal to Kudloff's argument is the fact that Kudloff was not "maintaining or operating" a ski area or any place of public or private outdoor entertainment. Over a period of years, Kudloff had taken some steps to develop a ski area; however, he was far from completing his project, and was certainly not maintaining or operating such an area. Therefore, this statutory exemption is not available to Kudloff, and his claim of a constitutional violation based upon this statute is also without merit.

C.   INCREASED TAX BURDEN

Lastly, Kudloff claims that the increased tax burden imposed

9

by the annexation of his real property violated his constitutional rights. Montana law is clear that the levying of future taxes after an annexation does not constitute a taking of property. Harrison v. City of Missoula (1965), 146 Mont. 420, 425, 407 P.2d 703, 706. Kudloff's claim of a constitutional violation on this basis is without merit.

Because there has been no violation of any of Kudloff's constitutional rights by any of the defendants, the District Court properly dismissed the § 1983 claims. We do not need to address the District Court's holding that the doctrine of immunity barred these claims. This Court will uphold the result reached by the district court if its decision was correct, regardless of the reasons given by the district court for its conclusion. Shimsky v. Valley Credit Union (1984), 208 Mont. 186, 190, 676 P.2d 1308, 1310.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10

September 21, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Robert L. Stephens, Jr.
R.L. Stephens, P.C.
P.O. Box 1438
Billings, MT 59103-1438

Richard J. Carstensen
Attorney at Law
P. 0. Box 2093
Billings, MT 59103-2093

Jim Tillotson
City Attorney's Office
P.O. Box 1178
Billings, MT 59103

Leo S. Ward
Browning, Kaleczyc, Berry & Hoven
P. 0. Box 1697
Helena, MT 59624

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy