No. 01-669

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 110

DARLENE M. ROBINSON, individually and as Personal
Representative of the Estate of DONALD C. ROBINSON,
and on behalf of all others similarly situated,

        Plaintiff and Appellant,

   v.

THE STATE OF MONTANA; MARC RACICOT; JUDY
MARTZ, in here capacity as Governor of the State of Montana;
JOSEPH MAZUREK; MIKE McGRATH, in his capacity as
Attorney General of the State of Montana; LAURIE EKANGER;
and GAIL GRAY, in her capacity as head of the State Department
of Public Health and Human Services,

        Defendants and Respondents.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. CDV-2001-311,
                Honorable Thomas C. Honzel, Presiding

COUNSEL OF RECORD:

        For Appellant:

                Michael Cok and Michael Wheat (argued), Cok, Wheat, Brown
                and McGarry, Bozeman, Montana

                William Rossbach, Rossbach Brennan, Missoula, Montana

        For Respondents:

                Honorable Mike McGrath, Attorney General;
                Chris D. Tweeten (argued), Chief Counsel, Helena, Montana

Argued: May 28, 2002
Submitted: June 6, 2002
Decided: April 25, 2003

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Darlene M. Robinson (Robinson) appeals from the judgment of the First Judicial District Court, Lewis and Clark County, dismissing her complaint against the State of Montana.

¶2 Robinson is the personal representative of Donald C. Robinson. Robinson brought this suit to enforce her deceased husband's rights, as a Medicaid recipient, and the rights of other similarly situated Medicaid recipients, to a share of the settlement proceeds recovered by the State of Montana through its lawsuit against the tobacco manufacturers.

## Background

¶3 Before a person can obtain Medicaid benefits in Montana, that person must meet the indigency standards set forth at § 53-6-131, MCA. A person applying for Medicaid benefits must assign "all rights" to recover health care expenses from third parties. Section 53-2-613(2), MCA. The Medicaid statutes also give the State a lien on any recovery of health care expenses from a third party. Section 53-2-612, MCA. This "lien" statute sets forth a protocol which provides that after the State has been reimbursed for all of its fees, costs, and Medicaid payments, "[t]he remainder, if any, must be paid to the [Medicaid] recipient." Section 53-2-612(3)(c), MCA.

¶4 Robinson and her husband qualified as indigents eligible to receive Medicaid benefits, and Mr. Robinson assigned his rights to recover health care expenses from third parties to the State of Montana. Having thus qualified for Medicaid benefits, Mr. Robinson received State medical assistance for the treatment of his tobacco-related illnesses.

2

¶5     In May of 1997, the State of Montana filed a lawsuit against five major cigarette manufacturers seeking to recover damages for increased expenses under the State Medicaid program and increased outlays for health insurance for state workers.

¶6     In November of 1998, the State of Montana entered into a Master Settlement Agreement (MSA) with the tobacco manufacturers. Under the MSA, over forty settling states, including Montana, are receiving payments according to a schedule set forth in the agreement. The payments will continue indefinitely as long as cigarettes are sold by the settling companies in the United States. Montana's share of the settlement proceeds was calculated, in part, based on the number of Medicaid recipients in Montana, the cost of Medicaid services in Montana and the amount Montana historically contributes to Medicaid.

¶7     In November 2000, Montana voters passed a ballot issue creating a constitutional trust fund into which 40 percent of the State's tobacco payments received on or after January 1, 2001, are to be paid. The income earned by the trust fund is to be used only for new public health programs to benefit the people of Montana. Art. XII, Sec. 4, Mont. Const.

¶8     Under the terms of the MSA, Montana released all claims it had against the tobacco manufacturers, including those it held "directly, indirectly, derivatively or in any other capacity . . . ." Robinson argues that the claims released by the State include Mr. Robinson's claims for medical care which he assigned to the State. Robinson argues that, since her husband's claims against the tobacco manufacturers were released by the State as consideration for the MSA, his estate is entitled to participate in the settlement distribution.

¶9     Robinson's suit is one of more than two dozen similar suits filed in courts across the United States in which Medicaid recipients have claimed entitlement to a share of state tobacco settlement proceeds. The State points out that the courts which have addressed the merits of such claims have unanimously held that there is no legal basis for the plaintiffs' claims for settlement monies. The State asserts that there are six reasons why Robinson's claims fail as a matter of law:

¶10    (1)  The statute relied upon by Robinson, § 53-2-612(3)(c), MCA, only applies where the State through the Department of Public Health and Human Services files suit; where a county files suit; or where the individual Medicaid recipient files suit to recover damages. Robinson's suit does not come within any of these statutory categories.

¶11    (2)  Even assuming, arguendo, that the MSA released the plaintiffs' claims, such a release would not trigger the apportionment scheme set forth in § 53-2-612(3)(c), MCA.

¶12    (3)  Robinson's assertion that the MSA released recipients' individual claims for medical payments they made fails since the MSA defines "Released Claims" to exclude claims brought on behalf of individuals for individual damages.

¶13    (4)  Congress has amended the Medicaid laws so that the states are free to use the payments for whatever purposes their respective legislatures may choose.

¶14    (5) The tobacco lawsuit settlement was not intended to confer rights on third parties such as Robinson. It was intended to prevent tobacco companies from marketing cigarettes to children and to provide compensation to the states for tax dollars expended as a result of tobacco use by their citizens.

4

¶15 (6) The State has not waived its immunity from suit for these claims. The constitutional waiver of sovereign immunity in Art. II, Sec. 18, Mont. Const., has been held to apply only to claims sounding in tort.

¶16 The District Court granted the State's motion to dismiss the complaint under Rule 12, M.R.Civ.P., holding that Robinson's claim for "remainder" monies is dependent upon the provisions of § 53-2-612, MCA, subsections (2) and (3). The District Court held that since the tobacco litigation was not filed by the Department or a county and was not brought in the name of the Medicaid recipient, as required by subsection (2), the apportionment provisions of subsection (3) did not come into play. The District Court further concluded that the MSA did not release any claims that the Medicaid recipients may have against the tobacco manufacturers. We agree with the District Court's analysis and affirm its decision.

¶17 Robinson presents the following issues for review:

¶18 Did the District Court err in concluding that the State's lawsuit against the tobacco manufacturers did not include assigned claims from Medicaid recipients?

¶19 Did the District Court err in concluding that the claims of the Medicaid recipients were not released by the State's Master Settlement Agreement with the tobacco manufacturers?

¶20 In reviewing an order granting a Rule 12, M.R.Civ.P., motion to dismiss, we construe the complaint in the light most favorable to the plaintiffs. The complaint may not be dismissed unless it appears that the plaintiffs are not entitled to relief under any set of facts

that could be proved in support of their claims. *Fennessy v. Dorrington*, 2001 MT 204, ¶ 9, 306 Mont. 307, ¶ 9, 32 P.3d 1250, ¶ 9.

## Discussion

¶21    Robinson essentially argues that the State of Montana, by entering into the MSA, released the claims for medical care that Mr. Robinson and other Medicaid recipients had previously assigned to the State. Since Mr. Robinson lost any right he had to pursue the tobacco manufacturers, Robinson (on his behalf) contends that she is entitled to the benefit of § 53-2-612(3)(c), MCA. This statute pertains to the allocation of settlement monies and provides that "[t]he remainder, if any, must be paid to the recipient." Robinson's argument is based upon an incorrect reading of both the MSA and the statute in question.

¶22    Section 53-2-612(1) through (3)(c), MCA, provides as follows:

> (1) Upon notice by the department, a county, or the recipient to a third party or the third party's insurer as provided in subsection (5)(b), the department or county has a lien upon all money paid by a third party or the third party's insurer in satisfaction of a judgment or settlement arising from a recipient's claim for damages or compensation for personal injury, disease, illness, or disability to the extent that the department or county has paid medical assistance on behalf of the recipient for the same personal injury, disease, illness, or disability.
> (2) The department or county may, in the name of the recipient on whose behalf medical assistance has been paid by the department or county, commence and prosecute to final conclusion any action that may be necessary to recover from a third party or the third party's insurer compensation or damages for medical assistance paid by the department or county on behalf of the recipient. This section does not affect the right of the recipient to initiate and prosecute to final conclusion an action for damages or compensation in the recipient's own name in accordance with the provisions of this section.
> (3)(a) The lien:

(i) applies to all money paid by a third party or a third party's insurer regardless of whether the recovery is allocated by the parties or a court to any particular type or element of damages; and

(ii) is subordinate to the lien of an attorney under 37-61-420.

(b) Unless specifically provided by law, the recipient's right to recover damages or compensation from a third party or a third party's insurer may not be reduced or denied on the ground that the recipient's costs of medical treatment and medical-related services have been paid by the department or county under any public assistance program.

(c) From the amount collected by the department, county, or recipient from legal proceedings or as a result of settlement, reasonable attorney fees and costs must be first deducted and paid. Unless the department or county and the recipient agree to a different settlement, the amount previously paid as medical assistance by the department or county, less a pro rata share of attorney fees and costs, must be deducted next and paid to the department or county. The remainder, if any, must be paid to the recipient.

¶23 Robinson's statutory argument focuses solely on the recipients' subsection (3)(c) right to the "remainder" of the "amount collected" by the Department. That language, however, must be read in the context of the entire statute. Subsection (3)(c)'s reference to the "amount collected" from a legal proceeding or settlement relates back to the proceedings initiated under subsection (2). Subsection (2) allows "the department" or "a county" to commence and prosecute an action against a third party to recover monies paid "by the department or county on behalf of the recipient." As the State correctly points out, the suit against the tobacco manufacturers was filed by the State of Montana. It was not brought by the "department" or by a "county." Furthermore, subsection (2) requires that the action be "in the name of the recipient on whose behalf medical assistance has been paid." This suit was not filed in the name of Mr. Robinson or any other Medicaid recipients. We hold that the District Court correctly concluded that the tobacco litigation was not initiated by the

7

Department nor filed in the name of the recipients. Accordingly, the settlement did not trigger a "remainder" payment under § 53-2-612(3)(c), MCA.

¶24   The District Court also noted that in May 1999, Congress amended 42 U.S.C. § 1396b(d)(3) to provide that MSA settlement funds were not to be considered overpayments under federal Medicaid law. The amendment allows the states to "use amounts recovered or paid to the State as part of a comprehensive or individual settlement . . . for any expenditures determined appropriate by the State." The federal circuit courts that have considered the effect of the 1999 amendment have all concluded that it precludes suits by Medicaid recipients for a portion of the MSA settlement proceeds. The Sixth Circuit has stated:

> By this amendment, Congress clarified that the states were to be able to allocate the monies received under the M.S.A. as they "determined appropriate." The States certainly were not to be forced to allocate the money to Medicaid recipients who, having received treatment paid for by the government, now seek the monies intended for treating future patients. If the States wish to allocate all of the funds they receive under the M.S.A. to future treatment of tobacco-related illness, under 42 U.S.C. § 1396b(d)(3) they may do so. This is a clear-cut Congressional statement that forecloses the existence of an implied private right of action, under 42 U.S.C. § 1983, seeking to divert the tobacco settlement money.

*Barton v. Summers* (6th Cir. 2002), 293 F.3d 944, 955.   In *Cardenas v. Anzai* (9th Cir. 2002), 311 F.3d 929, the Ninth Circuit Court joined its sister circuits and held "that the plain language of § 1396b(d)(3)(B)(ii) forecloses the plaintiffs' claims." *Cardenas,* 311 F.3d at 940. The First Circuit agreed with the Second Circuit and concluded, "that the funds described in that section as available 'for any expenditures determined appropriate by the

8

State' cannot simultaneously be owed to Medicaid recipients." *Greenless v. Almont* (1st Cir. 2002), 277 F.3d 601, 608 (citing *Tyler v. Douglas* (2nd Cir. 2001), 280 F.3d 116, 122-23). As these recent circuit court decisions establish, the District Court correctly concluded that, "if there was a question as to whether the Medicaid third party recovery laws applied to the settlement payments, Congress [through the 1999 amendment] made it clear that they do not."

¶25 Finally, we address Robinson's assertion that the claims of the Medicaid recipients were released by the MSA with the tobacco manufacturers. In resolving this issue we look to the allegations of the amended complaint and the terms of the MSA. As pointed out above, the amended complaint was not brought in the name of the Medicaid recipients. Rather, the claims were brought on behalf of the State of Montana on the relation of the Attorney General. The State's First Amended Complaint does not seek to recover amounts expended by individual Medicaid recipients on their own behalf but rather to recover sums *expended by the State* for treatment of Medicaid recipients' tobacco-related illnesses. Furthermore, the MSA clearly states that monies paid in settlement "are in settlement of the Settling States' antitrust, consumer protection, common law negligence, statutory, common law and equitable claims . . . ."

¶26 The Release section of the MSA sets forth the scope of the release given to the tobacco manufacturers as follows:

> Upon the occurrence of State-Specific Finality in a Settling State, such Settling State shall absolutely and unconditionally release and forever discharge all Released Parties from all Released Claims that the Releasing Parties directly,

9

indirectly, derivatively, or in any other capacity ever had, now have, or hereafter can, shall or may have.

Accordingly, the scope of the release only encompasses "released claims" held by "released parties."

¶27 Under the MSA, a "Released Claim" includes claims "that were, could be or could have been asserted now or in the future in [state tobacco lawsuits listed in the MSA] or in any comparable action in federal, state or local court brought by a Settling State or a Releasing Party . . . ." The term "Releasing Party" includes the State and its agents and officers, its political subdivisions to the extent the State has power under State law to bind them to a settlement and "to the extent that any such person or entity is seeking relief on behalf of or generally applicable to the general public in such Settling State or the people of the State, as opposed solely to private or individual relief for separate and distinct injuries . . . ."

¶28 A claim would be considered released by the State only if it is one that could have been brought by the State or a "Releasing Party." *Floyd v. Thompson* (7th Cir. 2000), 227 F.3d 1029, 1036. Members of the plaintiff class are not "Releasing Parties" under the MSA to the extent they can sue for individual medical expenses arising out of the use of tobacco because the definition of "Releasing Party" includes individuals only if they are seeking relief on behalf of the general public and not if they are seeking "private or individual relief for separate or distinct injuries." *Floyd,* 227 F.3d at 1034, 1037. Individual claims for

10

damages or compensation would be deemed to have been released by the MSA only if the claims were such that they could have been filed by the State.

¶29 Robinson contends that, pursuant to § 53-2-613(2), MCA, "all the rights" Mr. Robinson had to seek payment for medical care from the tobacco manufacturers were assigned to the State, thus placing the State in a position to fully compromise all of Robinson's claims. Under federal law, however, the assignment extends only to amounts expended by the State for Medicaid benefits for the recipient. 42 C.F.R. 433.145(c). Even assuming, *arguendo*, that the MSA encompasses assigned claims, the question is: which claims are enforceable by the State under Medicaid law. Clearly, under state Medicaid law, the State may file an independent action against a third party on the assignment, but only to *the amount paid by the State of Montana*. Section 53-2-612(2), MCA. As the Seventh Circuit noted in *Floyd*, "[i]f the only thing the individuals assigned was their right to recover the amounts paid by the Medicaid program–not their right to recover any excess–then there is nothing left to distribute to them to which they could have any claims." 227 F.3d at 1036.

¶30 Section 53-2-612(2) MCA, provides that the Department may, in the name of a medical assistance recipient, prosecute any action to recover from a third party damages for medical assistance "paid by the Department" on behalf of the recipient. This grant of authority is subject to the following proviso: "[t]his section does not affect the right of the recipient to initiate and prosecute to final conclusion an action for damages or compensation in the recipient's own name in accordance with the provisions of this section." Section 53-2-

11

612(2), MCA. Thus, the recipients, in assigning claims to the Department, expressly retained their ability to sue on any claims for damages or compensation.

¶31    The recipients did not assign any right to reimbursement for expenses they, as opposed to the State, incurred for tobacco-related diseases. Nor did they assign any right to pursue personal claims for damages or compensation for tobacco-related illness. Under the MSA, "Released Claims" includes only those claims the State could have brought. The State would have had no standing to assert the recipients' individual claims for damages. Furthermore, the definition of "Releasing Parties" excludes the individual Medicaid recipients. The District Court was correct in concluding that the MSA did not release any claims for compensation or damages inuring to the members of the plaintiff class.

¶32    The judgment of the District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ JIM RICE

Justice Terry N. Trieweiler concurring and dissenting.

¶33     I concur with the result of the majority Opinion, however, I do not agree with all that is stated in that Opinion and, in fact, conclude that the Opinion is unnecessarily based, in part, on a completely erroneous conclusion of law.

¶34     I concur with the majority's conclusion that the provision in § 53-2-612(3)(c), MCA, for distribution of the "remainder" of settlement proceeds to a medicaid recipient is not applicable to the proceeds recovered from Montana's suit against tobacco manufacturers because that suit was not brought pursuant to § 53-2-612, MCA.  Furthermore, while the terms of the master settlement agreement are a model of unnecessarily complex legalese and at times internally inconsistent, I concur that when reading the State's amended complaint in combination with certain terms of the agreement, individual claims for compensation have not been released by the State's participation in the MSA.

¶35     I disagree with the majority's statement in ¶ 29 that under both federal and state medicaid law, the only claims assigned to the State of Montana by medicaid recipients are those for recovery of benefits paid by the State of Montana.  The assignment statute, which is virtually ignored in the majority Opinion, is § 53-2-613, MCA.  It provides in relevant part that:

> (2) A person who signs an application for financial assistance, as defined in 53-2-902, or for related medical assistance assigns to the state, to the department, and to the county, if county funds were used to pay for services, <u>all rights</u> that the applicant may have to monetary and medical support from any other person in the applicant's own or in behalf of any other family member for whom application is made.  A person who signs an application for public assistance other than financial assistance, as defined in 53-2-902, or for

14

related medical assistance may, in accordance with rules adopted by the department, be required to assign to the state, to the department, and to the county all rights that the applicant may have to monetary and medical support from any other person in the applicant's own behalf or on behalf of any other family member for whom application is made.

¶36 Although subparagraph (3) of § 53-2-613, MCA, makes the assignment specifically applicable to paid and accrued but unpaid benefits, there is no language in § 53-2-613, MCA, which limits the assignment of "all rights the applicant may have" to only those amounts paid by the State. Nor is there any citation in ¶ 29 of the majority Opinion to statutory authority for the incorrect statement.

¶37 However, that part of the majority Opinion with which I most strongly disagree and which is unnecessary to the majority's decision or review of the District Court's judgment, and therefore merely misleading dicta, is the majority's conclusion in ¶ 24 that even if the "remainder" provision in § 53-2-612(3)(c), MCA, was applicable to the facts of this case, it has been preempted by 42 U.S.C. § 1396b(d)(3) enacted in 1999. That federal statute, by its plain language, does not apply to the "remainder" provision found in § 53-2-612(3)(c), MCA, which in fact is based on 42 U.S.C. § 1396k–a statute which was unamended by 42 U.S.C § 1396b(d)(3). Section 1396b(d)(3) relates simply to a state's obligation to reimburse the federal government its proportionate share of medicare expenditures that the state recovers from third parties. It provides that that obligation "shall not apply to any amount recovered or paid to a state as part of the comprehensive settlement of November 1998 between manufacturers of tobacco products . . . and State Attorneys General. . . ." 42 U.S.C. § 1396b(d)(3)(B)(i). That amendment in no way affects the separate obligation provided for

15

in 42 U.S.C. § 1396k(b) to reimburse individual recipients for amounts recovered from third parties over and above what is necessary to reimburse the State for its portion of payments made on behalf of those recipients. The majority's inclination to march lockstep with federal courts that have considered the effect of the 1999 amendment is of little consolation. It is very rare, in my experience, for any federal court not to embrace even the wildest notion of federal preemption. Had the State in fact sought to recover damages sustained individually by Donald C. Robinson pursuant to the assignment provided for at § 53-2-613(2), MCA, and been successful in that effort, I would conclude that the "remainder" provision in 42 U.S.C. § 1396k is applicable. However, I conclude that that is not the case.

¶38 For these reasons, while I concur with the result of the majority Opinion, I do not agree with all that is stated therein and dissent with the majority's interpretation and application of 42 U.S.C. § 1396b(d)(3)(B)(i).

/S/ TERRY N. TRIEWEILER