FILED

11/15/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0660

DA 21-0660

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 229

TAI TAM, LLC,

      Plaintiff and Appellant,

   v.

MISSOULA COUNTY, acting by and through its
BOARD OF COUNTY COMMISSIONERS,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-21-853
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Alan F. McCormick, Garlington, Lohn & Robinson, PLLP, Missoula,
Montana

      For Appellee:

            Kirsten H. Pabst, Missoula County Attorney, John W. Hart, Dylan Jaicks,
Civil Deputy County Attorneys, Missoula, Montana

Submitted on Briefs:  November 9, 2022

Decided:  November 15, 2022

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Plaintiff and Appellant Tai Tam, LLC (Tai Tam), appeals from the December 2, 2021 Order Granting Defendant's Motion to Dismiss issued by the Fourth Judicial District Court, Missoula County. The District Court's order granted the August 30, 2021 motion to dismiss filed by Defendant and Appellee Missoula County, acting by and through its Board of County Commissioners (Board), after determining Tai Tam's complaint was both time-barred and insufficiently pled.

¶2 We address the following restated issues on appeal:

*1. Did the District Court err when it determined a claim pursuant to § 76-3-625(1), MCA (2019), is subject to a 30-day statute of limitations?*

*2. Did the District Court err when it determined the Appellant's 42 U.S.C. § 1983 claims lacked a sufficient protected property interest to survive an M. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim?*

¶3 We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Tai Tam is the owner of real property in Missoula County. The subject property at issue in this case consists of a 28.3-acre parcel, known as McCauley Meadows. In 2018, Tai Tam submitted a subdivision proposal for McCauley Meadows, which sought to subdivide the parcel into 17 lots and set aside a 2.5-acre parcel for permanent agricultural use. The Board denied Tai Tam's subdivision application, in part because it determined the proposal failed to adequately mitigate the loss of agricultural soils. Tai Tam later submitted a second application to subdivide McCauley Meadows, this time seeking to subdivide the parcel into 14 lots and set aside a 3.8-acre parcel for permanent agricultural

2

use. On June 31, 2021, this proposal was denied after the Board determined the proposal failed to adequately mitigate the loss of agricultural soils and mitigate the impact to bird habitat.

¶5 Several years before Tai Tam's first application to the Board, a prior landowner had sought to subdivide the parcel into a 12-lot subdivision to be known as Reilly Acres. The Board did not approve the application and suggested the applicant redesign the subdivision to mitigate the loss of agricultural soils. The applicant redesigned the proposed subdivision, but did not resubmit the application to the Board. In late 2015, the Missoula Consolidated Planning Board sent a recommendation to the Board to approve standards for mitigating the loss of agricultural land in subdivisions. In January 2016, the Board declined to adopt the proposed standards. McCauley Meadows is also subject to several planning documents, including the Missoula County Subdivision Regulations, 2016 Missoula County Growth Policy, 2019 Missoula Area Land Use Element, and the Target Range Neighborhood Plan. The relevant planning documents contained a land use designation for McCauley Meadows as "residential," with a density of one dwelling unit per acre. This designation is the same as the adjacent residential developments around McCauley Meadows.

¶6 Tai Tam filed its Complaint in this matter on July 14, 2021. In its Complaint, Tai Tam made a claim for statutory damages against the Board pursuant to § 76-3-625(1), MCA (2019), as well as equal protection, takings, and due process claims alleging deprivation of rights under 42 U.S.C. § 1983. The Board moved to dismiss Tai Tam's Complaint for failure to state a claim upon which relief can be granted pursuant to M. R.

3

Civ. P. 12(b)(6). The Board's motion asserted Tai Tam's claims brought under § 76-3-625(1), MCA (2019), were subject to a 30-day statute of limitations and were not timely filed, while the § 1983 claims failed to state a sufficient protected property interest and were not well-pled. After the parties briefed the matter, the District Court granted the Board's motion to dismiss. The court determined Tai Tam's § 76-3-625(1), MCA (2019), claims were barred by a 30-day statute of limitations and its § 1983 claims failed to state a claim upon which relief could be granted, as the Complaint failed to show Tai Tam had a sufficient protected property interest and its claims were not well-pled.

¶7 Tai Tam appeals. Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶8 We review a district court's ruling on a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6) de novo. *Dickson v. Marino*, 2020 MT 196, ¶ 6, 400 Mont. 526, 469 P.3d 159. A district court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Marshall v. Safeco Ins. Co.*, 2018 MT 45, ¶ 6, 390 Mont. 358, 413 P.3d 828. A district court's determination that a complaint has failed to state a claim for which relief can be granted is a conclusion of law which we review for correctness. *Cossitt v. Flathead Indus.*, 2018 MT 82, ¶ 7, 391 Mont. 156, 415 P.3d 486.

4

**DISCUSSION**

¶9 *1. Did the District Court err when it determined a claim pursuant to § 76-3-625(1), MCA (2019), is subject to a 30-day statute of limitations?*

¶10 The District Court determined Tai Tam's action for statutory damages under § 76-3-625(1), MCA (2019), was barred by a 30-day statute of limitations. On appeal, Tai Tam asserts the District Court erred by importing the 30-day statute of limitations provided for in § 76-3-625(2), MCA (2019), to Tai Tam's claims brought under § 76-3-625(1), MCA (2019), which does not contain a specific statute of limitations. The Board contends the District Court correctly construed § 76-3-625, MCA (2019), as a whole when it determined claims brought under § 76-3-625(1), MCA (2019), were subject to a 30-day statute of limitations. We agree with Tai Tam.

¶11 "All civil actions must be commenced within the periods prescribed in [Title 27, Chapter 2, Part 2, MCA] except when another statute specifically provides a different limitation." Section 27-2-105, MCA. The Board argued, and the District Court determined, that § 76-3-625, MCA (2019), specifically provided for a different limitation—30 days. That statute stated, in full:

> (1) A person who has filed with the governing body an application for a subdivision under this chapter may bring an action in district court to sue the governing body to recover actual damages caused by a final action, decision, or order of the governing body or a regulation adopted pursuant to this chapter. The governing body's decision, based on the record as a whole, must be sustained unless the decision being challenged is arbitrary, capricious, or unlawful.
>
> (2) A party identified in subsection (3) who is aggrieved by a decision of the governing body to approve, conditionally approve, or deny an application and preliminary plat for a proposed subdivision or a final subdivision plat may, within 30 days from the date of the written decision, appeal to the

5

district court in the county in which the property involved is located. The petition must specify the grounds upon which the appeal is made. The governing body's decision, based on the record as a whole, must be sustained unless the decision being challenged is arbitrary, capricious, or unlawful.

(3) The following parties may appeal under the provisions of subsection (2):

(a) the subdivider;

(b) a landowner with a property boundary contiguous to the proposed subdivision or a private landowner with property within the county or municipality where the subdivision is proposed if that landowner can show a likelihood of material injury to the landowner's property or its value;

(c) the county commissioners of the county where the subdivision is proposed; and

(d)
(i) a first-class municipality, as described in 7-1-4111, if a subdivision is proposed within 3 miles of its limits;

(ii) a second-class municipality, as described in 7-1-4111, if a subdivision is proposed within 2 miles of its limits; and

(iii) a third-class municipality or a town, as described in 7-1-4111, if a subdivision is proposed within 1 mile of its limits.

(4) For the purposes of this section, "aggrieved" means a person who can demonstrate a specific personal and legal interest, as distinguished from a general interest, who has been or is likely to be specially and injuriously affected by the decision.

Section 76-3-625, MCA (2019).[1]

¶12     The 30-day limitation the District Court determined was applicable to Tai Tam's

claims in this case is located in § 76-3-625(2), MCA (2019). The District Court's Order

---

[1] This statute has since been amended by the Legislature to include a 180-day statute of limitations for actions brought under subsection (1). *See* § 76-3-625(1), MCA (2021 Mont. Laws ch. 190, § 2).

6

found "any claim under § 76-3-625(2), MCA, is barred." While correct, the court's finding was not necessary in this case because Tai Tam's Complaint specifically brought claims under § 76-3-625(1), MCA (2019), not § 76-3-625(2), MCA (2019). What remained for the District Court to determine, then, was whether the 30-day limitation of § 76-3-625(2), MCA (2019), claims was necessarily imported to claims brought under § 76-3-625(1), MCA (2019), when interpreting the statue as a whole.

¶13    "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Section 1-2-101, MCA. We interpret a statute first by looking to its plain language and "will not interpret the statute further if the language is clear and unambiguous." *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003. "If the intent of the legislature can be determined from the plain meaning of the words used in the statute, the plain meaning controls, and this Court need go no further nor apply any other means of interpretation." *Mont. Vending, Inc. v. Coca-Cola Bottling Co.*, 2003 MT 282, ¶ 21, 318 Mont. 1, 78 P.3d 499 (citing *Gulbrandson v. Carey*, 272 Mont. 494, 500, 901 P.2d 573, 577 (1995)).

¶14    In finding that a 30-day statute of limitations applied to claims brought under § 76-3-625(1), MCA (2019), the District Court noted both § 76-3-625(1), MCA (2019), and § 76-3-625(2), MCA (2019), contain identical language which states that "[t]he governing body's decision, based on the record as a whole, must be sustained unless the

7

decision being challenged is arbitrary, capricious, or unlawful." Section 76-3-625(1), (2), MCA (2019). While it is true that actions brought pursuant to subsection (1) and those brought pursuant to subsection (2) have the same standard of review, that does not mean any other provisions contained within those subsections are automatically transferable between the other. Section 76-3-625(1), MCA (2019), allows for a "person who has filed with the governing body an application for a subdivision" to bring an "action . . . to recover actual damages[.]" Section 76-3-625(2), MCA (2019), meanwhile, permits a subdivider, certain landowners, county commissioners, or municipalities who are "aggrieved by a decision . . . to approve, conditionally approve, or deny an application and preliminary plat for a proposed subdivision or a final subdivision plat" to "appeal to the district court," with the added caveat that such appeal must be made "within 30 days from the date of the written decision[.]" Beyond the standard of review noted by the District Court, the language of subsections (1) and (2) is simply different, and the plain language of § 76-3-625(1), MCA (2019), does not contain a 30-day statute of limitations. Because the language is clear and unambiguous, there is no need to go beyond the plain language of the statute in this case to find a 30-day statute of limitations for claims under § 76-3-625(1), MCA (2019), which does not exist in the text. *Mont. Sports Shooting Ass'n*, ¶ 11. To determine otherwise would require this Court "to insert what has been omitted or to omit what has been inserted," in violation of § 1-2-101, MCA.

¶15 Ultimately, we find the plain language of § 76-3-625(1), MCA (2019), is not ambiguous and does not contain a 30-day statute of limitations. Prior to the 2021 amendments by the Legislature, § 76-3-625(1), MCA (2019), "did not specify a time-limit

8

to bring" an action. *Lewis & Clark Cty. v. Wirth*, 2022 MT 105, ¶ 29, 409 Mont. 1, 510 P.3d 1206 (interpreting the substantially similar § 76-3-625(1), MCA (2015)).[2] Had the Legislature intended for claims brought pursuant to § 76-3-625(1), MCA (2019), to have the same 30-day statute of limitations as those brought under § 76-3-625(2), MCA (2019), it could have written that into the statute. It did not. The District Court therefore erred when it determined Tai Tam's claims brought under § 76-3-625(1), MCA (2019), were subject to a 30-day statute of limitations and dismissed them pursuant to M. R. Civ. P. 12(b)(6).

¶16     *2. Did the District Court err when it determined the Appellant's 42 U.S.C. § 1983 claims lacked a sufficient protected property interest to survive an M. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim?*

¶17     In addition to the statutory claims brought under § 76-3-625(1), MCA (2019), Tai Tam's Complaint also brought claims under 42 U.S.C. § 1983 for deprivation of rights. The District Court determined Tai Tam's Complaint failed to state a sufficient protected property interest, were not well-pled, and dismissed the claims pursuant to M. R. Civ. P. 12(b)(6). The District Court, in dismissing the § 1983 claims, determined there was no protected property interest in a subdivision application. On appeal, Tai Tam does not contend it had a protected property interest in its subdivision application, but asserts its § 1983 claims are based on its inherent rights as a landowner of land affected by Missoula County's exercise of its police power. The Board, meanwhile, asserts Tai Tam's rights

---

[2] In *Wirth*, we incorrectly stated there "is now a 140-day time limit to file a claim after an agency action under" § 76-3-625(1), MCA. *Wirth*, ¶ 29 n.6. It is in fact a 180-day time limit. Section 76-3-625(1), MCA (2021 Mont. Laws ch. 190, § 2).

inherent as a landowner are insufficient to show a protected property interest in this case arising out of the subdivision process. The Board further asserts if this Court determines Tai Tam's inherent rights as a landowner are sufficient to show a protected property interest for § 1983 purposes, that Tai Tam failed to state sufficient facts to survive a motion to dismiss.

¶18 To begin, we must note the procedural posture of this case. This matter is before us following the District Court's M. R. Civ. P. 12(b)(6) dismissal for failure to state a claim. A motion to dismiss is "viewed with disfavor and rarely granted." *Fennessy v. Dorrington*, 2001 MT 204, ¶ 9, 306 Mont. 307, 32 P.3d 1250. In reviewing a Rule 12(b)(6) dismissal, "we construe the complaint in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true." *Barthel v. Barretts Minerals Inc.*, 2021 MT 232, ¶ 9, 405 Mont. 345, 496 P.3d 541 (citing *Robinson v. State*, 2003 MT 110, ¶ 20, 315 Mont. 353, 68 P.3d 750). We are not, however, required to take as true any allegations in the complaint that are legal conclusions. *Barthel*, ¶ 9 (citing *Cowan v. Cowan*, 2004 MT 97, ¶ 14, 321 Mont. 13, 89 P.3d 6). Ultimately, a complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Barthel*, ¶ 9 (citing *Cowan*, ¶ 10). Because this comes to us following a Rule 12(b)(6) dismissal, there is not a developed factual record and we simply take all well-pled allegations from Tai Tam's complaint as true. The following discussion makes no judgments on whether Tai Tam's claims could, or would, win at trial, or even survive a Rule 56 motion for summary judgment following further development of the factual record. With that in mind, we turn to whether Tai Tam's

10

claims, as pled, are sufficient to survive a Rule 12(b)(6) motion to dismiss. We find they are.

¶19 Tai Tam asserted three claims under 42 U.S.C. § 1983—violation of due process, taking of real property without just compensation, and violation of equal protection. 42 U.S.C. § 1983 provides for a cause of action when state actors violate a federally protected constitutional right. *Renenger v. State*, 2018 MT 228, ¶ 8, 392 Mont. 495, 426 P.3d 559. That statute states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

¶20 "In order to state a viable § 1983 claim, the plaintiff must first establish it possesses a protected interest since the guarantees of the Fifth and Fourteenth Amendments 'apply only when a constitutionally protected liberty interest or property interest is at stake.'" *Kiely Constr. L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 23, 312 Mont. 52, 57 P.3d 836 (quoting *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993)). Whether Tai Tam has a sufficient protected property interest to survive a motion to dismiss its § 1983 claims is therefore a "threshold question," which must be "answered in the affirmative[.]" *Seven Up*

11

*Pete Venture v. State*, 2005 MT 146, ¶ 26, 327 Mont. 306, 114 P.3d 1009 (quoting *Kiely*, ¶ 25).

¶21　On appeal, the Board, in part, asserts § 1983 claims are not allowed because Tai Tam has sufficient remedies under the Montana Subdivision and Platting Act (MSPA), found in Title 76, chapter 3, MCA. To allow such claims to go forward when Tai Tam also brought claims under § 76-3-625(1), MCA (2019), according to the Board, "would effectively insert an attorney fees provision into the MSPA in violation of the American Rule regarding attorney fees." Neither of these contentions were raised before the District Court. "The general rule in Montana is that this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory." *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, 961 P.2d 100 (citing *Day v. Payne*, 280 Mont. 273, 276, 929 P.2d 864, 866 (1996)). We generally follow this rule because it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. *Gateway Hosp. Grp. Inc. v. Phila. Indem. Ins. Co.*, 2020 MT 125, ¶ 15, 400 Mont. 80, 464 P.3d 44.[3] We therefore decline to address

---

[3] The Dissent asserts it does not make sense to follow our general rule of not addressing the issues which have been raised by the Board for the first time on appeal in this case because the "reasoning supporting the general rule is inapplicable" when the result would be to uphold, rather than reverse the District Court in this case. Dissent, ¶ 38. Our general rule declining to address issues raised for the first time on appeal does not only concern itself with our results towards a district court's ruling, however, because it is also "unfair to allow a party to choose to remain silent in the trial court in the face of error" and take its chances on a favorable outcome. *Day*, 280 Mont. at 277, 929 P.2d at 866 (citation omitted). The Board took its chances on the District Court agreeing with its theory all § 1983 claims were precluded in this case because Tai Tam was a subdivider and prevailed, wrongly, based on that theory below. Rewarding this strategy because this Court later delved into federal law regarding § 1983 claims—an astute reader will discover that nearly all of the federal cases cited in both this Opinion and in the Dissent are nowhere to be found in the briefs filed by the parties either below or on appeal here—and discovered there *may* be issues which

12

whether under the circumstances of this case where Tai Tam asserts claims as a landowner, not a subdivider, it would have a sufficient remedy under the MSPA or whether allowing § 1983 claims impermissibly inserts an attorney fees provision into the MSPA.[4]

¶22 Pursuant to M. R. Civ. P. 8(a), Tai Tam must state a "short and plain statement of the claim" showing it is entitled to relief along with a demand for the relief sought. In its Complaint, Tai Tam noted it was not bringing its § 1983 claims as a subdivider, because "a subdivider does not have a protected property interest in a subdivision application," but as a landowner with "rights inherent in the ownership of land which are protected by 42 U.S.C. §1983 and the Fifth Amendment to the United States Constitution." The District Court, in dismissing Tai Tam's § 1983 claims, noted Tai Tam "concede[d]" it did not have a protected property interest in the approval of a subdivision application, and therefore its Complaint failed to state a cause of action for due process and takings claims. While the District Court was correct that Tai Tam lacked a protected property interest in a subdivision application, as Tai Tam specifically conceded in its Complaint, the court failed to address

---

*could* prevent Tai Tam from being allowed to assert § 1983 claims depending on how the record in this case is developed would certainly be "unfair" in this case.

[4] *Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908 (1981) (overruled, in part, by *Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S. Ct. 662, 664 (1986)) and its progeny "hold that a deprivation of liberty or property is not cognizable under section 1983 when a state's post-deprivation remedies are adequate to protect a victim's procedural due process rights." *Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir. 1989). "However, 'the Parratt line of cases does not focus on the relevance of procedural protections to alleged violations of substantive constitutional rights.'" *Wood*, 879 F.2d at 588 (quoting *Smith v. City of Fontana*, 818 F.2d 1411, 1414 (9th Cir. 1987 (overruled, in part, by *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999) (en banc))). We note that any contention regarding Tai Tam's availability of state remedies will need to be developed in further proceedings.

13

whether Tai Tam's status as a landowner was sufficient to allow it to bring § 1983 claims in this case. Under the pertinent standard of review following a Rule 12(b)(6) motion to dismiss, we find Tai Tam's ownership of McCauley Meadows is sufficient to state a protected property interest and bring § 1983 claims against the Board in this case.

¶23 We have previously held that ownership of real property constitutes a "constitutionally protected property interest[.]" *Helena Sand & Gravel, Inc. v. Lewis & Clark Cty. Planning & Zoning Comm'n*, 2012 MT 272, ¶ 48, 367 Mont. 130, 290 P.3d 691; *see also Kafka v. Mont. Dep't of Fish, Wildlife & Parks*, 2008 MT 460, ¶ 66, 348 Mont. 80, 201 P.3d 8 (finding a compensable property interest arising out of the ownership of real and personal property). Rather than apply this interest to Tai Tam's § 1983 claims, the District Court took Tai Tam's concession it did not have a protected property interest in the subdivision application and ended its inquiry there. This was in error, as the District Court was required to address whether Tai Tam's rights inherent in its ownership of McCauley Meadows were violated by the Board's actions, and inactions, in this case.

¶24 Having determined Tai Tam's ownership of property was a sufficient protected property interest such that it could make § 1983 claims, we must also determine whether its claims, as pled, survive a Rule 12(b)(6) motion to dismiss for failure to state a claim. When it comes to local governments, 42 U.S.C. § 1983 provides a limited remedy, first spelled out by the United States Supreme Court in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978). As we have stated in recognizing the *Monell* principle, "[a] local governmental entity may be held liable under § 1983 only when it is shown that the entity itself caused the constitutional violation at issue through the implementation of a

14

policy or custom of that governmental entity." *Dorwart v. Caraway*, 1998 MT 191, ¶ 115, 290 Mont. 196, 966 P.2d 1121 (overruled, in part, on other grounds by *Trs. of Ind. Univ. v. Buxbaum*, 2003 MT 97, ¶ 46, 315 Mont. 210, 69 P.3d 663). "Stated another way, in evaluating a local government's § 1983 liability, courts must determine: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the local government unit is responsible for that violation." *Miller v. City of Red Lodge*, 2003 MT 44, ¶ 21, 314 Mont. 278, 65 P.3d 562 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S. Ct. 1061, 1066 (1992)). "[I]n order to impose liability on a local governmental entity under § 1983, a plaintiff must establish[:] (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Dorwart*, ¶ 115 (internal quotation marks and citation omitted).[5] Tai Tam's Complaint alleged the Board violated its rights to due process and equal protection, and constituted a taking of Tai Tam's property without just compensation, when the Board "implemented policies to protect viewsheds, protect generic ecologic values, and protect adjacent property owners, despite having no such adopted regulations," and "[h]aving adopted plans acknowledging much of the prime agricultural soils in the Target Range area have been developed, the

---

[5] Our 4-part test was adopted from, and is identical to, the elements to maintain a claim against a local government under *Monell* as set forth by the Ninth Circuit in *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-91, 109 S. Ct. 1197, 1205-06 (1989)).

Board now requires the few remaining landowners to unfairly shoulder the burden of preserving what remains via policies and actions carried out under color of state law." While Tai Tam's Complaint does not set forth the 4-part test in detail, under our liberal pleading rules and considering that neither party raised or briefed this issue, we find the Complaint sufficiently sets forth a § 1983 claim. [6]

¶25 Under the Constitutions of both Montana and the United States, a person may not be deprived of life, liberty, or property without due process of law. Mont. Const. art. II, § 17; U.S. Const. amend. V; U.S. Const. amend. XIV. The guarantee of due process has both a procedural and a substantive component, and "the requirements for procedural due process are (1) notice, and (2) opportunity for a hearing appropriate to the nature of the case." *Montanans for Justice v. State ex rel. McGrath*, 2006 MT 277, ¶¶ 29-30, 334 Mont. 237, 146 P.3d 759. This Court has "previously stated that 'due process generally requires notice of a proposed action which could result in depriving a person of a property interest and the opportunity to be heard regarding that action.'" *Geil v. Missoula Irrigation Dist.*, 2002 MT 269, ¶ 53, 312 Mont. 320, 59 P.3d 398 (quoting *Pickens v. Shelton-Thompson*, 2000 MT 131, ¶ 13, 300 Mont. 16, 3 P.3d 603). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Smith v. Bd. of Horse Racing*, 1998 MT 91, ¶ 11, 288 Mont. 249, 956 P.2d 752 (quoting *Connell v. Dep't of Soc. & Rehab. Servs., Child Support Enf't Div.*, 280 Mont. 491, 496,

---

[6] It is noted, though, that Tai Tam will be required to establish each of these four elements to successfully prosecute the § 1983 claim.

16

930 P.2d 88, 91 (1997)).  The allegations of Tai Tam's Complaint, when taken as true—as we must when reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim—set forth a claim that its right to due process is being violated by the Board not implementing the regulations it has adopted and by implementing policies for which Tai Tam has not had a notice and opportunity to be heard.  Specifically, Tai Tam asserts the Board has "implemented policies to protect viewsheds, protect generic ecologic values, and protect adjacent property owners, *despite having no such adopted regulations*." (Emphasis added.)  Tai Tam's complaint alleges the Board is both failing to implement regulations it has adopted and implementing policies which are not based on any adopted regulations at all.  Taken as true, these allegations set forth a claim that Tai Tam, regardless of the hearings held on its actual subdivision application in 2020, has not been given an opportunity to be heard at a meaningful time and in a meaningful manner regarding the Board's adoption and implementation of policies and regulations which could deprive Tai Tam of its property interest as a landowner.  *Smith*, ¶ 11.

¶26    As pled, the allegations set forth in Tai Tam's complaint are sufficient to survive the Board's Rule 12(b)(6) motion to dismiss and the District Court erred by dismissing Tai Tam's due process claim.  Whether it is sufficient, after further development of the record, to defeat a Rule 56 motion for summary judgment or to win at trial is not relevant at this stage of the proceedings and is simply a matter for another day.

¶27    Turning to Tai Tam's takings claim, under the Montana Constitution, "[p]rivate property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner.  In the event

17

of litigation, just compensation shall include necessary expenses of litigation to be awarded by the court when the private property owner prevails." Mont. Const. art. II, § 29. Similarly, under the United States Constitution, private property shall not be taken for public use without just compensation. U.S. Const. amend. V. "[E]ven when a compensable property interest still retains economic value, just compensation may be required if '"justice and fairness" require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons.'" *Kafka*, ¶ 69 (quoting *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S. Ct. 2646, 2659 (1978)). As we have noted, "[d]etermining when such compensation is required is essentially an ad hoc, factual inquiry based on the circumstances of each case." *Kafka*, ¶ 69 (internal quotation marks omitted). Taking the allegations of Tai Tam's Complaint as true, which we must at this stage in the proceedings, *Barthel*, ¶ 9, we find Tai Tam has sufficiently pled a takings claim in this case. According to the Complaint, Tai Tam alleges the Board is applying rules and regulations to the development of McCauley Meadows which have not been adopted with proper notice and opportunity to be heard and is unfairly requiring Tai Tam to shoulder the burden of preserving agricultural lands and viewsheds which was not imposed on other landowners. Whether these burdens are so unfair that they require compensation is, again, a question for another day.

¶28    The Dissent contends no takings claim can lie in this case due to our precedent that "the discretionary denial of a desired land-use permit under existing law does not give rise to a successful takings claim because it does not sufficiently interfere with reasonable

18

investment-backed expectations or economic value under *Penn Central*." Dissent, ¶ 39. As previously explained, determining when compensation for a takings claim is required is "essentially an ad hoc, factual inquiry based on the circumstances of each case," *Kafka*, ¶ 69 (internal quotation marks omitted), and therefore dismissal of a takings claim such as Tai Tam's is generally inappropriate at the Rule 12(b)(6) stage. Nevertheless, the Dissent maintains that, based upon our decisions in *Richards v. Cty. of Missoula*, 2012 MT 236, 366 Mont. 416, 288 P.3d 175, and *Helena Sand & Gravel*, Tai Tam's taking claim fails as a matter of law. *Richards* involved a subdivision application which was denied "due to its lack of compliance with state law, lack of compliance with Missoula County Growth Plan, and lack of compliance with Missoula County Subdivision Regulations." *Richards*, ¶ 10. We found the landowner in that case could not "allege economic loss when he should have appreciated the risk that, due to existing law, his subdivision may never have materialized." *Richards*, ¶ 35. Notably, this decision was reached following a grant of summary judgment, after the factual record was developed, and not after a motion to dismiss such as the one here. In contrast to the proposed subdivision which violated the law in *Richards*, the allegations of Tai Tam's complaint here set forth a claim that its proposed subdivision *does* comply with state law, Missoula County Subdivision Regulations, 2016 Missoula County Growth Policy, 2019 Missoula Area Land Use Element, and the Target Range Neighborhood Plan, but the Board is nevertheless arbitrarily using its regulatory power to take value from Tai Tam's property by imposing regulations which have not been adopted and requiring Tai Tam to shoulder the burden of preserving agricultural lands and viewsheds which was not imposed on other landowners. At this stage, we must take this

19

assertion as true. Tai Tam's allegation it is being economically injured due to the Board's actions which disproportionately concentrated the responsibility to preserve agricultural lands and viewsheds on Tai Tam, but not adjacent landowners, constitutes a quintessential takings claim, *see Kafka*, ¶ 69, and it should be allowed to test that claim following further development of the factual record. It is only after the development of the factual record when one could determine, as the Dissent prematurely attempts to here, whether the risk the proposed development would never materialize was "reflected in the fair market price at the time of the purchase," Dissent, ¶ 44, how the Board's unwritten standards interplay with Tai Tam's investment-backed expectations, whether the unwritten standards alleged by Tai Tam in this case constitute a "a policy or custom of [the Board]" which "amounts to deliberate indifference to [Tai Tam's] constitutional right[s]," *Dorwart*, ¶ 115, and many other questions raised in this case. The Dissent appears to contend that, as long as the Board does not write down its regulatory burdens after a party purchases property, any unwritten standards used to frustrate a proposed development cannot constitute the imposition of a new regulatory burden. Dissent, ¶ 44 n.4. This apparent assertion is incorrect. "The Supreme Court has made clear that policies can include written policies, *unwritten customs and practices*, failure to train municipal employees on avoiding certain obvious constitutional violations, and, in rare instances, single constitutional violations [which] are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality[.]" *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (internal citation omitted, emphasis added). The relevant allegation of Tai Tam's Complaint, which we must take as true at this stage

20

of the proceedings, is that the Board, through its use of unwritten policies which have never been formally adopted, is imposing new regulatory burdens on Tai Tam's land. The allegations of the Complaint are sufficient to survive the Board's Rule 12(b)(6) motion to dismiss, and the District Court erred by dismissing Tai Tam's § 1983 takings claim.

¶29 Finally, the District Court also dismissed Tai Tam's equal protection claim under § 1983 as insufficiently pled. As we have already determined Tai Tam's ownership of the property at issue in this case provides a sufficient protected property interest to allow it to bring § 1983 claims, we need not address that issue further here. The District Court determined Tai Tam "failed to state an adequate cause of action for equal protection and that it was treated differently than other subdivision applicants in the same circumstances."

¶30 "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985) (quoting U.S. Const. amend. XIV). Tai Tam's Complaint sought to bring a "class of one" equal protection claim. Tai Tam can bring an equal protection claim as a "class of one" by alleging it was intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment. *Totem Beverages, Inc. v. Great Falls-Cascade Cty. City-Cty. Bd. of Health*, 2019 MT 273, ¶ 29, 397 Mont. 527, 452 P.3d 923; *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75 (2000). The factual allegations of Tai Tam's complaint—that surrounding property has been allowed to be developed in the same pattern as that desired by Tai Tam; that Tai Tam

21

has been subjected to policies which Missoula County has not formally adopted and are applied on an ad hoc basis; that Tai Tam is being forced to preserve its property for agriculture when other landowners in the area were allowed to develop their properties; and that the Board is not following the 2019 Missoula Area Land Use Element regarding McCauley Meadows—when taken as true for the purposes of a Rule 12(b)(6) motion to dismiss, are sufficient to state a "class of one" equal protection claim sufficient to overcome a motion to dismiss.

¶31 The Dissent contends Tai Tam is not similarly situated to previous developers because it is "a late arrival," one who arrived after there was no longer "abundant open space available." Dissent, ¶ 46. "The basic rule of equal protection is that persons similarly situated with respect to a legitimate governmental purpose of the law must receive like treatment." *Rausch v. State Comp. Ins. Fund*, 2005 MT 140, ¶ 18, 327 Mont. 272, 114 P.3d 192. The 2019 Missoula Area Land Use Element applicable to McCauley Meadows, as set forth in Tai Tam's complaint, reflects that the property is entirely designated for "Rural Residential and Small Agriculture" with a density of one to two dwellings per acre—making it "similarly situated" with those previous developers of the area who were allowed to develop residential property from land designated for residential property. Regarding the Dissent's contention the Board had a rational basis to treat Tai Tam differently so as to preserve "some baseline level of undeveloped land in the area," Dissent, ¶ 46, the 2019 Missoula Area Land Use Element in fact removed a "parks and open space" designation from a portion of Tai Tam's parcel of land and designated it entirely as one for "Rural Residential and Small Agriculture." Taking the allegations of the complaint as true,

Tai Tam has stated a claim that the County had no rational basis to require Tai Tam to shoulder the burden of preserving open space in the area in contravention of the plain language of the 2019 Missoula Area Land Use Element which designates Tai Tam's property for residential use.

¶32　Tai Tam is not, at this stage in the litigation, required to show a likelihood of success on the merits of its § 1983 claims.  To defeat a Rule 12(b)(6) motion to dismiss, a party is simply required to state sufficient facts that, if true, demonstrate it would be entitled to relief. *Marshall*, ¶ 6.  In this case, Tai Tam has met that burden and the District Court erred by granting the Board's motion to dismiss.

## CONCLUSION

¶33　The District Court erred by determining Tai Tam's § 76-3-625(1), MCA, claim was subject to a 30-day statute of limitations and time-barred.  The District Court further erred by concluding Tai Tam's 42 U.S.C. § 1983 claims lacked a sufficient protected property interest and were insufficiently pled to survive an M. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim.

¶34　Reversed and remanded.

/S/ INGRID GUSTAFSON

We concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Chief Justice Mike McGrath, concurring and dissenting.

¶35 While I concur with the Majority on Issue One that the District Court erred in determining that Tai Tam's claim pursuant to § 76-3-625(1), MCA (2019), was subject to a 30-day statute of limitations, I dissent to the holding that the District Court erred in determining that Tai Tam's due process, regulatory takings, and equal protection claims brought pursuant to 42 U.S.C. § 1983 were subject to M. R. Civ. P. 12(b)(6) dismissal. Tai Tam has not shown that it would be entitled to relief pursuant to the relevant legal standards even when the factual allegations in the complaint are taken as true.

¶36 A claim is subject to M. R. Civ. P. 12(b)(6) dismissal if it "fails to state sufficient *facts that, if true, would entitle the claimant to relief* under that claim." *Anderson v. ReconTrust Co., N.A.*, 2017 MT 313, ¶ 8, 390 Mont. 12, 407 P.3d 692 (emphasis added, citations omitted). In other words, the validity of a plaintiff's factual allegations need not be tested through the fact-finding process if it can be determined as a matter of law that such factual allegations, even if true, could not satisfy the elements necessary to succeed on the claim. *See Commonwealth Edison Co. v. State*, 189 Mont. 191, 194, 615 P.2d 847, 849 (1980) (dismissal for failure to state a claim warranted "if as a matter of law, under any view of the alleged facts, plaintiffs cannot prevail").

¶37 Tai Tam raises three theories under its § 1983 claim, asserting that the Board's refusal to permit its proposed subdivision is: (1) a due process violation, (2) a constitutional taking, and (3) a violation of Tai Tam's equal protection rights.

24

¶38 With regard to Tai Tam's Due Process claim alleging that the Board's decision-making process is essentially standardless,[1] the Majority correctly acknowledges that, under *Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908 (1981), § 1983 claims for procedural due process violations are not cognizable where there are available adequate state procedures with which to seek redress. *See Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir. 1989) (deprivation of liberty or property is not cognizable under §1983 when a state's post-deprivation remedies are "adequate to protect a victim's procedural [as opposed to substantive] due process rights." (citing *Parratt*, 451 U.S. at 541-44, 101 S. Ct. 1916-17); *McRorie v. Shimoda*, 795 F.2d 780, 786 (9th Cir. 1986 ("[A] procedural due process violation . . . does not occur until the state deprives the individual of a procedure for redress."). Though the MSPA—which provides for judicial review of adverse subdivision decisions to determine if they are "arbitrary, capricious, or unlawful," § 76-3-625, MCA (2019)—obviously provides sufficient process under state law to address Tai Tam's claims and should thereby bar Tai Tam's § 1983 procedural due process claim, the Majority declines to so hold because the Board failed to raise this argument below. *See* Opinion, ¶ 21. However, as noted by the Majority, the reason for our general rule of declining to address an issue not raised below is to avoid faulting a District Court for failing to rule correctly on an issue it did not have the opportunity to consider. Opinion, ¶ 21;

---

[1] *E.g.*, *In re Miserocchi*, 749 A.2d 607, 611 (Vt. 2000) (with regard to insufficient criteria to determine whether to approve a change in nonconforming use, "such ad hoc decision-making denies . . . due process of law"); *Town of Westford v. Kilburn*, 300 A.2d 523, 526 (Vt. 1973) (reasoning that absent sufficient land use standards, "the door is opened to the exercise of . . . discretion in an arbitrary or discriminatory fashion").

*see Gateway Hosp. Grp. Inc. v. Phila. Indem. Uns. Co.*, 2020 MT 125, ¶ 15, 400 Mont. 80, 464 P.3d 44. Here, however, the District Court ruled to dismiss Tai Tam's due process claim on different grounds. Consideration of the applicable *Parratt* rule here on appeal would not have the effect of unfairly faulting the District Court, as the result would be to uphold, rather than reverse, that court. Blinding ourselves to the dispositive legal principle simply because it was not raised below makes no sense here where the reasoning supporting the general rule is inapplicable. Moreover, further development of the factual record is not necessary to resolve the purely legal question of whether, under *Parratt*, the MSPA bars Tai Tam's procedural due process claim.

¶39 Turning to Tai Tam's remaining claims, Tai Tam's complaint alleged that property was zoned as "residential," other developers in the area had previously been approved, and the Board had implied in its dealings with a previous owner of the property that a properly-designed subdivision could be approved, but that, after Tai Tam purchased the property, the Board essentially reached a de facto conclusion that the property would not be allowed to be developed under any circumstances. As the Majority notes, whether a regulatory burden on property that still retains some economic value amounts to a constitutional taking generally turns on consideration of (1) the "character" of the governmental action, (2) the regulation's interference with "distinct investment-backed expectations," and (3) the economic impact of the regulation on the claimant. Opinion, ¶ 27; *Kafka v. Mont. Dep't of Fish*, *Wildlife & Parks*, 2008 MT 460, ¶ 69, 348 Mont. 80, 201 P.3d 8 (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S. Ct. 2646, 2659 (1978)). While, as a general matter, the fact-specific nature of *Penn*

26

*Central's* regulatory taking standard outlined in *Kafka* may not easily lend itself to disposition at the 12(b)(6) stage, this particular case is subject to dismissal without further fact-finding because of our precedent providing that the discretionary denial of a desired land-use permit under existing law does not give rise to a successful takings claim because it does not sufficiently interfere with reasonable investment-backed expectations or economic value under *Penn Central*.

¶40     In *Richards v. County of Missoula* a developer, Richards, purchased property intending to build a subdivision. 2012 MT 236, ¶ 6, 366 Mont. 416, 288 P.3d 175. The developer's application for a subdivision permit was repeatedly denied despite efforts to work with state authorities to mitigate expected wildlife impacts. Richards, ¶¶ 6-10. Responding to the developer's takings claim on appeal, we focused on the fact that Richards had acquired the property with full knowledge and acceptance of the risk that it might not be approved for subdivision under existing law:

> Richards purchased the property with the intent of creating a subdivision. Richards fully understood, however, that he lawfully could subdivide the land only with County approval. Richards cannot now allege economic loss when he should have appreciated the risk that, due to existing law, his subdivision may never have materialized. Richards stands in the same place today that he was when he purchased the property—the owner of a 200-acre parcel that remains subject to subdivision review. Richards can sustain no takings claim under these circumstances.

*Richards*, ¶ 35.

¶41     Richards bought the property knowing that a subdivision might be approved, or it might not. Though the latter possibility proved to be the one that materialized, the state of affairs which Richards had relied upon when making his investment had not changed.

27

*See Loveladies Harbor v. United States*, 28 F.3d 1171, 1177 (Fed. Cir. 1994) ("In legal terms, the owner who bought with knowledge of the restraint could be said to have no reliance interest, or to have assumed the risk of any economic loss. In economic terms, it could be said that the market had already discounted for the restraint, so that a purchaser could not show a loss in his investment attributable to it."). This principle is reflected in our caselaw repeatedly finding that an unfavorable discretionary land-use permitting decision is not a taking because the property owner had no compensable property interest in receiving a favorable discretionary decision. *See Madison River R.V. Ltd. v. Town of Ennis*, 2000 MT 15, ¶¶ 7, 44, 298 Mont. 91, 994 P.2d 1098 (upholding district court ruling that plaintiff had not stated a claim for which relief could be granted where plaintiff alleged that municipality's denial of plat approval to build a campground constituted a regulatory taking); *Roe v. City of Missoula*, 2009 MT 417, ¶¶ 9, 43, 354 Mont. 1, 221 P.3d 1200 (denial of proposed boundary line relocation not a taking; no property right in discretionary approval); *Seven Up Pete Venture v. Montana*, 2005 MT 146, ¶ 28, 327 Mont. 306, 114 P.3d 1009 (right to mine is conditioned on acquisition of a permit which would constitute a cognizable property interest "only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured" (internal quotation omitted)); *Germann v. Stephens*, 2006 MT 130, ¶ 31, 332 Mont. 303, 137 P.3d 545 (no property right in issuance of a liquor license where city ordinance that was subject of takings claim was alleged to prevent plaintiff from operating bar and casino).

¶42 In contrast, in *Helena Sand & Gravel, Inc. v. Lewis & Clark Cty. Planning & Zoning Comm'n*, Helena Sand & Gravel, Inc. (HSG) had received a permit from the Department

of Environmental Quality (DEQ) to mine gravel on 110 acres of its property. 2012 MT 272, ¶ 7, 367 Mont. 130, 290 P.3d 691. However, the County then created a special zoning district that would prohibit industrial mining operations on the remaining 311 acres of the property, for which HSG had apparently also been considering pursuing a mining permit. *Helena Sand & Gravel,* ¶¶ 7, 12, 40. On appeal from summary judgment, we preliminarily held that HSG did not have a compensable property interest in obtaining a discretionary mining permit from DEQ. *Helena Sand & Gravel,* ¶¶ 35-45. However, we remanded to the District Court to conduct an analysis of the *Penn Central* factors to determine whether the County's actions potentially prohibiting the expansion of gravel mining on land that HSG already owned and was seeking to extend mining operations on impinged upon HSG's rights as a property owner[2] to the point of constituting a regulatory taking. *Helena Sand & Gravel,* ¶¶ 46-48.

---

[2] *Helena Sand & Gravel's* holding—that, while there is no compensable property interest in receiving a discretionary land use permitting approval, rights generally attendant to property ownership remain otherwise in play—appears to have been the genesis of the unnecessary and confusing debate over whether Tai Tam is best categorized as a landowner or a subdivider. *See* Opinion, ¶¶ 22-23 (citing *Helena Sand & Gravel*, ¶ 48). Quite simply, because (1) Tia Tam sought to develop land and (2) Tai Tam owns that land, it is *both* a subdivider and a property owner. *See* § 76-3-103(15), MCA (defining "subdivider" as "a person who causes land to be subdivided or who proposes a subdivision of land"); *Helena Sand & Gravel*, ¶ 46 ("protections of 'private property' . . . apply to real property owned in fee"). Tai Tam enjoys the protections the law extends both to subdividers—including the statutory right to seek judicial review of an unfavorable decision—and to property owners—including the constitutional rights to due process and just compensation for deprivation of compensable property interests. Section 76-3-625, MCA; *Helena Sand & Gravel*, ¶ 46. Below, Tai Tam apparently attempted to shift the focus away from the specific question of whether it had a compensable property interest in receiving subdivision approval—conceding that our caselaw is clear that it does not—and towards the general rights and interests afforded to an owner of real property by the Constitution, an effort the Majority now credits. Opinion, ¶¶ 22-23. The District Court correctly, in my view, rejected this strategy. Tai Tam's legal status as a subdivider under Title 76, chapter 3 never provided it with a right to just compensation for an unfavorable subdivision permitting decision, and Tai Tam's legal status

29

¶43    *Helena Sand & Gravel*, particularly as contrasted with *Richards*, therefore stands for the proposition that an unfavorable discretionary land-use permitting decision made pursuant to a *preexisting* regulatory framework (such as the DEQ mining permit) cannot form the basis of a takings claim, but a *new* regulatory structure implemented *after* the property was purchased to target a property owner (such as the new County zoning district) can.   The critical distinction lies in the reasonable expectations of the plaintiffs upon acquisition of the property, the second of the *Penn Central* factors.  *See Helena Sand & Gravel,* ¶ 46 (HSG ability to bring a takings claim subject to the *Penn Central* analysis "*by virtue of its investment* in 421 acres of real property" and the "impact of the zoning regulations on the value of that parcel of property" (emphasis added)); *Kafka*, ¶ 69.  In other words, this factor limits takings claims to "those who can 'demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime.'"   *Kafka*, ¶ 72 (quoting *Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1190 (Fed. Cir. 2004)).  HSG had no compensable property interest in the discretionary grant of a mining permit from DEQ pursuant to preexisting regulations—like the plaintiffs in *Richards*, *Roe*, *Seven Up Pete Venture*, and *Germann*—in part because HSG acquired the property with the knowledge that it was subject to discretionary DEQ approval upon which it could have no reasonable reliance and which would have been reflected in the property's fair market value.  *See Helena Sand and Gravel*, ¶ 45 (because DEQ mining permit is discretionary, "HSG is foreclosed from basing its takings claim on

as a property owner, as outlined above, is similarly unavailing to Tai Tam's claim under controlling takings law.

any alleged lost opportunity to mine its additional 310 acres"). *See also Loveladies Harbor*, 28 F.3d at 1177 (describing how an owner who bought with knowledge of the restraint has no reliance interest, and has assumed the risk of any economic loss and that the market would have already discounted for the restraint, such that the purchaser could show no loss); *Kafka*, ¶¶ 72-73 (describing role of market value in *Penn Central* analysis); *Richards*, ¶ 35. However, in *Helena Sand & Gravel*, unlike in *Richards*, the government subjected the property owner to an unforeseen *new* and additional regulatory impediment *after* the property was acquired and partially permitted by DEQ, thus potentially diminishing the property's fair market value and frustrating HSG's reasonable, investment-backed expectations of a gravel mine. *See Helena Sand & Gravel,* ¶ 46; *Kafka*, ¶¶ 69, 72.

¶44    Tai Tam's attempt to bring a takings claim on the basis of the discretionary denial of its development permit is easily dismissed pursuant to these established legal principles. Tai Tam purchased the property with the full understanding that it could not be subdivided without Board approval and cannot now allege economic loss based on the known risk that the subdivision may never have materialized. *See Richards*, ¶ 35.[3] Tai Tam does not allege

---

[3] Though, as noted by the Majority, the *Richards* decision was issued on summary judgment, not at the Rule 12(b)(6) stage, the relevance of *Richards* is not its procedural posture but, rather, the substantive rule of law that it set forth, namely that an unfavorable development permitting decision does not constitute a regulatory taking. Opinion, ¶ 28; *see Richards*, ¶¶ 34-35. *Richards'* reasoning referenced no factual peculiarities of that particular case. It is against this simple legal standard that Tai Tam's well-pled, non-conclusory factual allegations must be tested at the Rule 12(b)(6) stage here. *Anderson*, ¶ 8 (Rule (12(b)(6) dismissal is appropriate where claim "fails to state sufficient facts that, if true, would entitle the claimant to relief under that claim"). Because the facts alleged by Tai Tam, even if proven true or further developed through a fact-finding process, do not entitle Tai Tam to relief under the relevant takings jurisprudence, Rule 12(b)(6) dismissal is appropriate.

a new regulatory burden was imposed subsequent to Tai Tam's purchase of the property, only a hindsight realization that the risk Tai Tam willingly assumed, as would have been reflected in the fair market price at the time of the purchase, materialized in a foreseeable but undesired manner here. Tai Tam's complaint alleges that the Board's unfavorable decision was marred by imprecise legal standards, consideration of some factors Tai Tam believes should not have been considered, and a failure to consider other factors that Tai Tam argues merited more attention.[4] While these allegations might be relevant to a claim that the Board's decision was arbitrary, capricious, or unlawful pursuant to judicial review provided for by § 76-3-625, MCA (2019), they do not constitute facts which, if true, would entitle Tai Tam to relief for a takings claim. Thus, even taking Tai Tam's factual allegations as true, Tai Tam is not entitled to relief under relevant Montana takings jurisprudence, and the claim should therefore be subject to M. R. Civ. P. 12(b)(6) dismissal.[5]

---

[4] To the extent that Tai Tam alleges it has been subjected to a de facto adoption of a new *unwritten* agreement by the Board to set aside Tai Tam's land as open space, these arguments are better addressed through provisions for judicial review for arbitrary and capricious decisions under § 76-3-625(1), MCA (2019). Attempting to recast an unfavorable discretionary decision as a newly-adopted regulatory *policy* would vitiate our holdings distinguishing unfavorable discretionary permitting decisions pursuant to application of existing regulation (not a regulatory taking) from the adoption of *new* regulatory burdens upon the property (potentially a regulatory taking).

[5] Though the Majority asserts that preserving the area's remaining agricultural lands and viewsheds on Tai Tam's property after other open space in the area was developed constitutes a quintessential takings claim, Opinion, ¶ 28, neither the Majority nor Tai Tam cites to any case in which such facts have been found to constitute a taking. Further development of the record is not necessary to determine that Tai Tam cannot establish the existence of a constitutional taking on the basis of the alleged facts.

¶45 Additionally, as noted by the Majority, to succeed on an equal protection claim, Tai Tam must show that the Board intentionally treated Tai Tam differently from other similarly-situated developers without a rational basis for the distinction. Opinion, ¶ 30; *Totem Bevs. Inc. v. Great Falls-Cascade Cty. City-Cty. Bd. of Health*, 2019 MT 273, ¶ 29, 397 Mont. 527, 452 P.3d 923. Tai Tam alleged in its complaint that "[h]aving adopted plans acknowledging much of the prime agricultural soils in the Target Range area have been developed, the Board now requires the few *remaining landowners to unfairly shoulder the burden* of preserving what remains via policies and actions carried out under color of state law." (Emphasis added.) However, Tai Tam essentially concedes that its pleadings do *not* contain a factual allegation that similarly-situated developers were treated differently, stating on appeal that it is "not arguing [that] some other property owner in a similar circumstance received a subdivision approval."

¶46 Instead, Tai Tam states that it is "arguing [that] the [Board], having already permitted most of the area to develop in one form or another, is singling out Tai Tam's property for preservation as one of the few remaining undeveloped properties." This "singling out" or "preserv[ation of] what remains" allegation does not constitute an equal protection claim under the relevant legal standard because the facts set forth in Tai Tam's Complaint demonstrate that Tai Tam was not similarly situated to others in the area who were permitted to proceed with development. Tai Tam's Complaint asserts that its property is one of the few remaining undeveloped properties in the area and that, as a "remaining landowner[]," Tai Tam is being forced to "preserv[e] what remains." Thus, the facts alleged in Tai Tam's Complaint demonstrate that previous developers sought development

permits when there was still abundant open space available. Tai Tam, as a late arrival, is not similarly situated. Likewise, the facts in the Complaint establish a rational basis for the differential treatment: serving a legitimate interest in preserving some baseline level of undeveloped land in the area. Thus, even if Tai Tam can establish as true the factual allegation that the Board is "singling out Tai Tam's property for preservation as one of the few remaining undeveloped properties," it would not be entitled to relief under equal protection jurisprudence and its claim is therefore subject to Rule 12(b)(6) dismissal. Tai Tam points to no authority suggesting that the Equal Protection Clause requires that those seeking to develop the last remaining open space be treated the same as those who developed when undeveloped space was plentiful,[6] and testing or developing these factual allegations through a fact-finding process is therefore unnecessary to the resolution of this case.

¶47 Tai Tam has not shown on appeal that the factual allegations in the Complaint, when taken as true, entitle Tai Tam to relief under applicable legal standards for due process, regulatory takings, and equal protection claims. Tai Tam's claims are therefore subject to dismissal pursuant to M. R. Civ. P. 12(b)(6) without necessitating further fact finding. *See e.g.*, *Commonwealth Edison Co.*, 189 Mont. at 194, 615 P.2d at 849 ("examin[ing] the

---

[6] *Willowbrook v. Olech*, 528 U.S. 562, 564-65, 120 S. Ct. 1073, 1075 (2000), cited to by Tai Tam on appeal in support of its equal protection claim, involved an allegation that a municipality conditioned the connection of the plaintiff's property to the municipal water supply on the grant of a larger easement to the municipality than was demanded of other, similarly-situated property owners. *Willowbrook* is inapplicable here, where the facts as pled allege that Tai Tam, which owns "one of the few remaining undeveloped properties" is not similarly situated to those who developed when there was adequate open space remaining.

pleadings" and "factual matters which plaintiffs allege would invalidate the tax" before conducting a lengthy analysis of the law and concluding that the challenged coal tax was valid as a matter of law). For these reasons, I contend that the District Court did not err in dismissing Tai Tam's 42 U.S.C. § 1983 claims.

¶48    I therefore dissent with regard to Tai Tam's due process, regulatory takings, and equal protection claims brought pursuant to 42 U.S.C. § 1983.

/S/ MIKE McGRATH

Justice Beth Baker and Justice Dirk Sandefur join in the Concurrence and Dissent of Chief Justice Mike McGrath.

/S/ BETH BAKER
/S/ DIRK M. SANDEFUR